GERARD J. WASSON
California Bar Number 166636
427 C Street, Suite 310
San Diego, California 92101
Telephone: (619) 232-0181
gerard.wasson@sbcglobal.net

Attorney for Aldemar Mosquera Garces

UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF CALIFORNIA

(HONORABLE JANIS L. SAMMARTINO)

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>Plaintiff,<br><br>v.<br><br>ALDEMAR MOSQUERA GARCES,<br><br>Defendant. | Criminal No. 21CR2294-02-JLS<br><br>Date: November 10, 2022<br>Time: 9:00 a.m.<br><br>**DEFENDANT'S SENTENCING MEMORANDUM** |

The defendant, Aldemar Mosquera Garces, by counsel, Gerard J. Wasson, per Local Rule 73.11 and 18 U.S.C. § 3553(f), submits this Sentencing Memorandum.

## I.

## SUMMARY SENTENCING RECOMMENDATIONS

Counsel for Mr. Mosquera respectfully recommends 33-months custody.

## II.

## STATUTORY FACTORS UNDER 18 U.S.C. §3553

Under 18 U.S.C. § 3582(a) the court is directed to consider certain factors to determine the appropriate punishment, "recognizing that imprisonment is not an appropriate means of promoting correction and rehabilitation." Id. (Emphasis added). Under 18 U.S.C. § 3553(a) the Court is directed to "impose a sentence sufficient, but not greater than necessary to comply with purposes [of sentencing]." Taken together §§ 3582(a) and 3553(a) reflect a clear Congressional preference for the least possible sentence, and for appropriate alternatives to incarceration.

**A. The Nature And Circumstances Of The Offense, and The History And Characteristics Of the Offender (§ 3553(a)(1))**

**1. The Offense**

"The Offense Conduct" and "Defendant's Statement of the Offense" sections of the PSR, at ¶¶ 4-10 and 13-14, accurately reflect the facts of the offense.

**2. History and Characteristics of Mr. Mosquera[1]**

Aldemar Mosquera is a 22-year old, soft-spoken, introverted young man. He had a very difficult upbringing. His parents separated when he was 4 years old; he infrequently saw his father. Because his mother had to work, he received very little adult guidance. He attended school briefly, but had learning disabilities, and also had to work from a very early age to help his family financially. The family lives in impoverished conditions, with no running water.[2] But, he is blessed with strong family support. He has no tattoos. He does not use illegal drugs or abuse alcohol, and has never engaged in any violent behavior. To the contrary, he is described by those who know him best as a very kind, considerate young man. As the eldest sibling living at home, he is primarily concerned with providing for his family, especially for his disabled mother.[3]

**B. Advisory Sentencing Guidelines (§ 3553(a)(4) and (5))**

**1. Jointly-Recommended Sentencing Guideline Calculations**

The parties agreee with a base offense level is 38, a two-level "safety valve" adjustment, and a three-level adjustment for acceptance of responsibility, resulting in an adjusted offense level of 22. Mr. Mosquera recommends a minor role adjustment, resulting in a reduced base offense level to 34, and two-level minor role adjustment per § 3B1.2(b), and downward departure per § 5K2.0 and United States v. Cook, 938 F.2d 149 (9th Cir. 1991), or a variance under 18 U.S.C. § 3553, based on a combination of factors.

---

[1] Aldemar Mosquera's family circumstances, educational and employment histories, emotional and physical health, have all been accurately reflected by the PSR, at ¶¶ 35 - 44.

[2] See Exhibits A & B: Mosquera family photos.

[3] See Letters in Support of Defendant for Sentencing, filed under separate cover.

## 2. Chapter Three: Minor Role Adjustment

All of the § 3B1.2 factors support a mitigating role adjustment:

(1) <u>Existence of Other Known Participants</u> - Mr. Mosquera was recruited by others. While others packaged, and loaded the drugs onto the boat outside of his presence; others were to retrieve the drugs from the boat and unload it onto another boat.

(2) <u>Lack of Understanding Scope & Structure</u> - Other than the three co-defendants, Mr. Mosquera was not privy to the identities, hierarchy, and scope of activities of all other participants. He did not know the other three co-defendants prior to the offense.

(3) <u>No Participation in Planning or Organizing</u> - Mr. Mosquera had no communications with those coordinating the offense. He therefore had no logistical input. He was tasked with simply following instructions of putting gas into the fuel tanks.

(4) <u>No Decision Making Authority</u> - He had no authority to deviate from the instructions provided to him; he had no authority to act independently.

(5) <u>Acts Performed / Limited Responsibilities</u> - Mr. Mosquera was recruited to perform a simple, defined task. No special skills were needed to fulfill the limited responsibility of filling the fuel tank. This type of behavior is within the scope of the adjustment - "a defendant who is convicted of a drug trafficking offense, whose participation in that offense was limited to transporting or storing drugs" as a candidate for an adjustment. §3B1.2, App. Note 3(A).

(6) <u>No Proprietary or Possessory Interest</u> - Mr. Mosquera had no proprietary interest in the contraband; he was to be minimally compensated.

These facts establish Mr. Mosquera in the role of a courier - a role contemplated for a role adjustment within the Guidelines. Because the § 3B1.2 factors support it, a two-level minor role adjustment is legally authorized and justified.

## 3. Downward Departure &/or Variance

Mr. Mosquera's case presents a plethora of mitigation - a definite, atypical combination of factors that taken together warrant departure per § 5K2.0 and <u>United States v. Cook</u>, 938 F.2d 149 (9th Cir. 1991), or a variance under 18 U.S.C. § 3553.

**(a). Expedited Disposition - Agreement to Forego Extensive Litigation**

Mr. Mosquera resolved the matter expeditiously without the government having to litigate substantive motions. The Court is well aware cases under the MDLEA raise several complex issues, including Rule 5 violations, motions addressing the conditions of the lengthy transport to the United States, motions to compel discovery (i.e. legality of the origins of the government's investigation),[4] the destruction of evidence, and dispositive motions such as challenging jurisdiction, venue, and the constitutionality of the MDLEA; see e.g., United States v. Davila-Reyes, 23 F. 4th 153 (1st Cir. 2022, opinion withdrawn pending rehearing *en banc*) (First Circuit held 46 U.S.C. § 70502(d)(1)(C) facially unconstitutional because the provision applies to vessels that are not "stateless" under customary international law and therefore exceeds Congress' authority under the Felonies Clause).

Here, Mr. Mosquera remains very appreciative of the U.S. Coast Guard intervention and rescue. He requested a quick resolution to this case, without Counsel raising any of the above issues. The Court can take into account the "fast track"-type disposition in determining whether departure is appropriate. Mr. Mosquera's fulfillment of this "fast track"-type disposition has certainly resulted in a beneficial effect on the prosecutorial and judicial resources of the courts of this District.

**(b). Lack of Youthful Guidance / Turbulent Upbringing**

In affirming a departure based on a defendant's lack of youthful guidance, the Ninth Circuit observed that: "a criminal sentence must reflect an individualized

---

[4] See *How a C.I.A. Coverup Targeted a Whistleblower*, The New Yorker, October 30, 2020, describing a scheme by the C.I.A. and the F.B.I. in which more than a hundred entries in the Helios database labeled as originating from the F.B.I. were actually from a secret C.I.A. surveillance program. "Searching Helios, [the whistleblower] ultimately found more than 100 entries aboard the deceptive labeling," in which "57 prosecutions had relied on these entries" and 19 resulted in criminal convictions. Id at 4. "In all of the cases, [U.S.C.G.] cutters, relying on information from Helio, had intercepted small vessels on the open waters of the Pacific. What was not disclosed in court proceedings was that "classified C.I.A. information had led the Coast Guard to the locations of the smugglers." Id. "In most of the cases... F.B.I. agents submitted affidavits attributing the arrest to *routine patrols*." The affidavits were "intentionally misleading, denying prosecutors the information they needed to properly meet discovery obligations, and undermining the resulting convictions." Id. Although the New Yorker article only covers cases from Florida, it reads as though it is describing the origins of the origins of this investigation: routine patrols in the Pacific Ocean miraculously finding small go-fast boats carrying fishermen from Central America with cocaine.

assessment of a particular defendant's culpability rather than a mechanistic application of a given sentence to a given category of crime." United States v. Floyd, 945 F.2d 1096 (9th Cir. 1991)(in drug case, court affirms departure from 30 years to life to 17 years because of defendant's abandonment by his parents, and lack of youthful guidance). Here, as the PSR reflects, Mr. Mosquera had **very little adult guidance**, barely any education, and had to work as a child to help his family. There is no question that Mr. Mosquera suffered an atypically difficult upbringing, which justifies a departure from the guideline range alone, or in combination with other factors.

### (c.) Family Responsibilities / Motivation for Offense Conduct

The "United States Sentencing Guidelines do not require a judge to leave compassion and common sense at the door to the courtroom." U.S. v. Johnson, 964 F.2d 124, 129 (2d Cir. 1992) (13-level downward departure affirmed because sole responsibility of 4 young children is extraordinary family circumstance). Accordingly, family responsibilities are relevant to determining whether a sentence should be outside the applicable guideline range. § 5H1.6; see e.g., United States v. Pena, 930 F.2d 1486, 1494-95 (10th Cir. 1991)(affirming departure for defendant supported infant, and daughter with infant). Moreover, a defendant's motive for committing the offense is one important factor [in determining the sentence]. Wisconsin v. Mitchell, 508 U.S. 476, 485 (1993). Motives are most relevant when the trial judge sets the defendant's sentence, and it is not uncommon for a defendant to receive a minimum sentence because he was acting with good motives, or a rather high sentence because of his bad motives.[5]

Family responsibilities prompted Mr. Mosquera's involvement in the offense. Without a father present, and being the eldest sibling at home, Mr. Aldemar has taken on a parental role in the household for his younger siblings, ages 5, 8, and 9-years old. Moreover, his mother is permanently disabled after suffering a serious fall while working in the hills. She cannot walk; is in need of a wheelchair which the family cannot afford. It was these pressures that motivated Mr. Mosquera's agreement to become

---

1 W. LeFave & A. Scott, Substantive Criminal Law § 3.6(b), p. 324 (1986).

involved in the offense. Therefore, family circumstances and responsibilities - the sole motivation for the offense conduct, provides a basis for departure pursuant to § 5H1.6, or in combination with other factors per § 5K2.0.

### (d). Lack of Placement Options

Courts have found departure warranted based on the effect that a defendant's alienage has on custody and placement. In U.S. v. Cubillos, 91 F.3d 1342 (9th Cir. 1996), the Ninth Circuit remanded for further findings to determine whether departure was warranted on the basis of the effect that defendant's status as an alien has on Bureau of Prison custody. See also U.S. v. Davoudi, 172 F.3d 1130 (9th Cir.1999) (where defendant convicted of making false statements to bank, court had discretion to depart because deportable alien unable to take advantage of minimum security designation of the up-to six months of home confinement authorized by 18 U.S.C. §3624(c). Like the defendants in the above cases, Mr. Mosquera is precluded from early release to a Residential Reentry Center and programs that could reduce time imprisoned - based entirely on his alienage.

### (e.) Unlikeliness of Re-Offending

Mr. Mosquera is unlikely to ever re-offend. His time in custody in a foreign country where he never intended to be, especially during difficult pandemic conditions, has left an indelible mark on him. He is extremely remorseful. He has never been away from his family; he has never before been detained. Despite these difficult conditions, Mr. Mosquera remains positive, has made productive use of his time in custody,[6] and looks forward to the day when he can eventually reunite with his family.

The likelihood that a defendant "will engage in future criminal conduct [is] a central factor that a district court must assess when imposing sentence." Pepper v. U.S., 131 S.Ct. 1229, 1242 (2011). Courts have found the unlikeliness of recidivism as a basis for downward departure. See e.g, U.S. v. Carter, 538 F.3d 784 (7th Cir. 2008)(departure from 87-108 months to 24 months was reasonable for 61-year old defendant in money

---

[6] See Exhibit c - Certificate of Baptism, August 19, 2022.

laundering / tax fraud case because defendant's age is relevant to risk of recidivism); U.S. v. Smith, 2008 WL 1816564 (4th Cir. April 22, 2008)(departure from 78-97 months to 24 months not abuse of discretion where court noted among other factors that defendant had "an absence of risk that he will involve himself in similar conduct in the future").

In conclusion, even if the Court should decide that no factor merits a departure by itself, all the factors converge to create the picture of a person deserving of departure based on the unique set of factors, under Cook and § 5K2.0, or alternatively, a variance under § 3553(a). A variant sentence of 33 months imprisonment is a significant sentence that fulfills the purposes of sentencing under §§ 3553(a)(2)(A) and (B). It balances the seriousness of the offense with the characteristics of the offender, reduces the risk of recidivism, affords adequate deterrence and rehabilitation. See e.g. United States v. Qualls, 373 F.Supp. 2d 873, 877 (E.D. Wis. 2005) (a lesser prison term is sufficient to deter one who has not been subject to prior lengthy incarceration).

### III.

### SENTENCING RECOMMENDATION

Based on all the above, with the factors set forth in 18 U.S.C. § 3553(a), Counsel for Mr. Mosquera respectfully recommends a sentence of 33-months custody.

Dated: November 7, 2022

Respectfully submitted,
/s/ Gerard J. Wasson
GERARD J. WASSON
Attorney for Mr. Mosquera





# CERTIFICATE OF Baptism



This certifies that **Alamar Margarita Jarvis** was baptized in the name of the Father and of the Son and of the Holy Spirit on the **19th** day of **August**, **2022** at **San Juis** of **Oregon**

Pastor: *Jim Rickabaugh*

Then Peter said unto them, Repent, and be baptized every one of you in the name of Jesus Christ for the remission of sins, and ye shall receive the gift of the Holy Ghost. Acts 2:38 (KJV)

DEFENDANT'S EXHIBIT
U

0-8054-7331-9 • Broadman & Holman Supplies, Nashville, TN • Printed in U.S.A.